386 P.2d 411

**The STATE of Utah, Plaintiff and Respondent,**

v.

**Bernard Lawrence ALEXANDER, Defendant and Appellant.**

**No. 9856.**

Supreme Court of Utah.

Nov. 7, 1963.

1. (1953) 330 Mass. 161, 112 N.E.2d 250.

Henriod, C. J., dissented.

Robert L. Schmid, Lester J. Mazor, Salt Lake City, for appellant.

A. Pratt Kesler, Atty. Gen., Stephen L. Johnston, Asst. Atty. Gen., Salt Lake City, for respondent.

CROCKETT, Justice.

Defendant appeals from a purported "corrected" judgment and sentence of the Second District Court that he serve a term

of not to exceed five years in the state prison for the offense of issuing a check against insufficient funds. His contention is that the court had previously sentenced him to serve a term of one year for the same offense, which he has served, and that the later and different judgment and sentence was invalid.

The offense of issuing a check without sufficient funds to cover it is unusual in that the statute (Sec. 76–20–11, U.C.A.1953, Supp.) allows the court the choice of two alternative punishments: a sentence in the county jail for not more than one year, or in the state prison for not more than five years.

The defendant pleaded guilty to the charge. At the time for sentence, after some questioning and discussion between the judge, Hon. John F. Wahlquist, and counsel for the defendant and for the State, the court concluded the matter by stating thus:

"I sentence you to serve a term in the Utah State Prison not to exceed one year."

Pursuant to the above sentence a commitment issued committing the defendant to the state prison for one year. The document is captioned "Judgment, sentence and commitment" and it carries an additional comment, apparently inserted some time after it was first made, with a different typewriter, that "the last four years of the 'not to exceed five years' contemplated by statute is hereby suspended as an act of mercy because of the great injustices that were suffered by the defendant in the past."

After the defendant had served the specified one year in the state prison, he requested his release. This was refused and he was taken before another judge of the Second District Court, Hon. Parley E. Norseth, for the imposition of a "corrected" sentence. The judge then expressed the opinion that he could change the sentence to one in the state prison for not to exceed five years, but that he had no right to correct the sentence as to the institution.[1-a] He thereupon pronounced a "corrected" sentence that the defendant serve a term of not to exceed five years in the state prison, from which this appeal is taken.

At the time of the original sentence, Judge Wahlquist, for his own reasons which are not here our concern, did not choose to sentence the defendant in accordance with either of the alternatives provided by the statute, that is, to one year in the *county*

[1-a]. This is based on the judge's comment, Record Page 43: "So in my opinion there is no question but what this court at this time has to resentence the defendant to serve not more than five years in the state penitentiary. If I pursued that one step further, if I attempt to say that he's to serve in the county jail for one year, then I would have to make that retroactive and discharge the defendant. Under the facts and circumstances of this case, I do not feel that this court can do that legally."

*jail,* or for not to exceed five years in the *state prison.* Instead he fashioned a combination of the two in sentencing defendant to serve one year in the *state prison,* and issued the commitment described above in furtherance of that purpose. In view of the difficulty and uncertainty this sentence has given rise to when considered in connection with the statute authorizing the penalty for this offense, it is necessary and proper to look to the background circumstances disclosed by the record to see what was intended [1] and what the ends of justice demand.

From the statements of Judge Wahlquist it is unmistakable that due to various considerations, including the fact that the defendant had already been in the Weber county jail for three months, it was the judge's decision and his clearly expressed intent that the defendant should serve only the term of one year, rather than the five-year term; and that to carry out that purpose he in fact pronounced judgment and sentence that the defendant serve a term of "not to exceed one year." The sentence for that term was a lawful and proper one for the crime charged. Of lesser and subordinate importance is that it designated the state prison instead of the county jail as the place it should be served. This was an impropriety which could be corrected at the instance of either the defendant or of the State, but it did not invalidate the sentence.[2]

It appears that in all likelihood Judge Norseth would have corrected the sentence as to the place of incarceration had he not acted under the erroneous assumption that he could only correct the sentence as to the time to be served. We are aware of no justification for that assumption. As we have heretofore indicated, where a judge has based his act on an erroneous conception of the law, it may be corrected.[3] It is our opinion that fairness to the defendant requires that correction be made as to the place of incarceration.[4] It would be repugnant to the most elemental principles of justice if the State could wait until after the defendant has fulfilled the demands of the judgment by serving the time required, then declare the sentence invalid on the ground that it designated the wrong prison and impose another and longer sentence on him for the same offense. When one convicted

---

1. See Nickle v. Reeder, 144 Colo. 593, 357 P.2d 921; State v. Williams, 30 Wash.2d 18, 190 P.2d 734; Ex parte Bailleaux, 26 Wash.2d 60, 173 P.2d 122. See also 24 C.J.S. Criminal Law § 1585.
2. For authority that confinement in some place other than that designated by statute does not vitiate the sentence, see Ex parte Tani, 29 Nev. 385, 91 P. 137, 13 L.R.A.,N.S., 518. See generally 24 C.J.S. Criminal Law, § 1581.
3. See Walker v. Peterson, 3 Utah 2d 54, 278 P.2d 291.
4. That generally defendant should be given advantage of favorable aspect of sentence where there is ambiguity, or uncertainty, see 24 C.J.S. Criminal Law, § 1585, p. 580, notes 11, 11.5 and cases there cited.

of a crime has been sentenced and has served the term as specified, even though in the wrong place of incarceration, he cannot thereafter be resentenced to another term for the same offense.

■ We see no merit in the State's attack on the timeliness of the appeal. Our Code of Criminal Procedure (Sec. 77–39–3 U.C.A.1953) provides that:

"An appeal may be taken by the defendant: (1) From a final judgment of conviction. (2) From an order made, after judgment, affecting the substantial rights of the parties."

The purported second judgment and sentence was clearly an attempt to render a judgment in the criminal proceeding which if valid would have affected defendant's substantial rights. It was therefore appealable under the statute just quoted and the appeal was taken within 60 days as permitted by the criminal code.

This case is remanded with directions for the district court to correct the sentence for the defendant to serve not to exceed one year in the county jail; and he having served the time required, to be ordered released.

McDONOUGH and WADE, JJ., concur.

CALLISTER, J., concurs in the result.

HENRIOD, Chief Justice (dissenting).

I dissent. The main opinion quotes the trial court as saying "I sentence you to serve a term in the Utah State Prison not to exceed one year." The court's full sentence was that the defendant "be sentenced to imprisonment in the Utah State Prison for a term not to exceed one year, the last four years of the 'not to exceed 5 years *contemplated by statute* is hereby *suspended* as an act of mercy * * *.' " The opinion goes on to say such added language was "apparently inserted some time after it (the signed, official sentence and commitment) was first made, with a different typewriter." This ignores the official record and deletes something that no one objected to. It amounts to our revision of an official record by way of conjecture and apparency. The so-called apparence of falsification of a record signed by the trial court, if true would be the subject for doing something about the trial court which has not made any such assertion.

The sentence clearly was void and needed correction. *At the behest of the defendant* himself, it *was* corrected by another judge, after the former and sentencing judge, for some reason or another, did not choose to resentence the defendant.

The main opinion attempts to justify its conclusion by saying the second judge who corrected the obviously void sentence of the first, expressed the opinion that he could change the sentence to 5 years in the state prison, but had no right to correct the sentence as to the institution where the sentence should be served. This writer can

find nothing in the record where the judge said precisely this.

The main opinion says that "In view of the difficulty and uncertainty this sentence has given rise to * * * it is necessary and proper to look to the background circumstances disclosed by the record to see what was intended and what the ends of justice demand." In the first place everyone admits the original sentence to be as void as a 15-man football team. As to what the trial court "intended," this cannot validate an obviously void sentence, and this record hardly reflects what the judge "intended," except to spare the defendant the admitted displeasure of county jailers and fellow inmates, generated by the defendant himself as a troublemaker—his letters of penitence and claims of illegal conviction to the contrary notwithstanding.

As to the main opinion's assertion that we look at the record to see what the ends of justice demand: The appellant himself offered in evidence the report of the Probation Department to show that he had been done injustice in these prior cases, although he had spent a third of his life in prison. If he chooses to introduce such record, he must take the bad with the good. He was fined $50 for petit larceny in a local police court; he says he met two fellows whom he did not know, in a local tavern, who gave him $50 to pass what he knew were bad checks, endorsing them as "Larry I. James." There were four other similar checks. In 1947 he spent 2 years and 6 months in an Oregon prison for robbery; he enlisted in the marines in February, 1951, and was discharged less than 5 months later as an undesirable; there is a pending charge in Oregon as of 1952 for assault with a dangerous weapon; he served 5 years for housebreaking in Oregon dating from early 1953; he was charged twice with receiving stolen property; in 1959 his bond was revoked in a case involving resisting arrest and being drunk; he was convicted of burglary in Montana, in 1960, and spent 7 months in jail, and has a record of half-dozen more arrests in Oregon, Washington, Idaho and Montana, apparently still pending. He was successful in having 3 convictions reversed by Circuit Courts, not Supreme Courts. He was married to a woman in 1951 after meeting her in a bar, which marriage failed because of his commitment to Oregon State Prison, after which he *thought* his wife had obtained a divorce. In 1958 he married another, lived with her 1½ months, not recalling her maiden name, but whom he labeled as a nut, and he doesn't know yet whether this marriage has been dissolved. In 1960 he maintained a common-law marriage with a woman after meeting her in a bar, who bore him a child. He conceded at the hearing on his petition for resentencing that he had been disciplined in prison for gambling.

Reasons for reciting the statements above simply are to justify the trial court's action

**20**

in resentencing the defendant: 1) Defendant asked that the Probation record be admitted, offering it as "Exhibit A," 2) it appears that this Court, in substituting its discretion for that of the trial court's, must have ignored or discounted this report and 3) the report itself fully would justify the trial court in its discretion to resentence defendant to the indeterminate term required under the statute, particularly in light of the fact the judge who originally sentenced the defendant, saw fit not to resentence him, even though the record reflects that he indicated he would, were a point made of the illegality of the sentence.

I do not agree with the main opinion's conclusion that if one is sentenced to the wrong place he cannot be resentenced if he has served time illegally. Taxpayers might be interested in such case. The question, of course, that poses itself is: what happens if a defendant is sentenced to the wrong place, serves half the time specified and asks for resentencing to the right place? This is a matter for the legislature.

The remand in this case, in my opinion, is beyond the authority of this Court, substitutes our "discretion" for that of the trial court with respect to resentencing after a void sentence, is not our business, is an abuse of our own discretion and strictly is a matter for the legislature, the trial court and the Board of Pardons to determine under present legislation.