William "Billy" JARRELL, Jr.,
Plaintiff-Appellant,

v.

CHEMICAL DEPENDENCY UNIT OF ACADIANA, Defendant-Appellee.

No. 85-4462.

United States Court of Appeals,
Fifth Circuit.

June 9, 1986.

Stephen Scott Chemino, Morrow & Morrow, Patrick C. Morrow, Opelousas, La., for plaintiff-appellant.

Ambrose K. Ramsey, III, Watson, Blanche, Wilson & Posner, Felix R. Weill, Baton Rouge, La., for defendant-appellee.

Before GEE, RUBIN and GARZA, Circuit Judges.

PER CURIAM:

William Jarrell was admitted to the Chemical Dependency Unit of Acadiana (CDUA), a private institution, pursuant to an emergency certificate provided for by La.Rev.Stat. 28:53 (West Annot.Supp.1986). The emergency certificate was signed by the local parish coroner in his capacity as a licensed physician.[1] After a few days in the CDUA Jarrell departed, and he has since brought this action in the district court seeking damages under 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights during the course of his treatment. The district court rendered summary judgment against Jarrell on the ground that there was no genuine issue of material fact as to whether the abuses Jarrell allegedly suffered resulted from state action. Jarrell appeals.

Jarrell argues that as the CDUA is heavily regulated by state law, and that because his admission was effected by a public official, the actions of the CDUA were state actions for purposes of the Fourteenth Amendment. We address those contentions in turn.

■ The "mere fact that a business is subject to state regulations does not by itself convert its action into that of the state for purposes of the Fourteenth Amendment." *Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534 (1982). In this instance the state did place its authority behind Jarrell's compulsory commitment. His treatment and confinement are part of a program that integrates the judgment of public officials, the police power of the state,[2] and treatment at private centers. Arguably, the state may have delegated to the CDUA its traditional authority to confine those who are dangerous, and the state's police power may stand behind some of the decisions of the CDUA personnel.[3] CDUA's position is, therefore, distinguishable from that of a private nursing home, one regulated by state laws but unable to admit or hold a patient against his will under the authority of state law.[4]

Although the state may have forced Jarrell's confinement and treatment, he has not alleged, and the record is barren of evidence to show, that the state's authority was linked to the specific conduct of CDUA's private employees complained of here. There is no nexus between the state's authority and the conduct alleged to be unconstitutional.[5] If the facts alleged by Jarrell are true, the CDUA employees may have acted contrary to state law; but the state did not direct them to do so. Whatever complaint Jarrell may have of their actions properly belongs in state court.

---

1. In that capacity, the coroner certified that Jarrell was either so gravely disabled as to be unable to care for himself, or that he was potentially dangerous to himself or others. *See* La. Rev.Stat.Ann. 28:53(B) (West 1975 & Supp. 1986). Jarrell does not assert that any fact set forth on the certificate was false or that his admission or subsequent confinement at the CDUA was either illegal under state law or unconstitutional. Rather, he asserts that CDUA employees treated him in a manner that violated his rights under Louisiana law as a chemical dependency unit patient. *See* La.Rev.Stat.Ann. 28:171(C) & (G) (West 1975 & Supp.1986). Specifically, he complains that his clothes were taken from him, that he was forced to wear institutional pajamas, and that he was temporarily denied access to a telephone. It is doubtful that these injuries amounted to a deprivation of his right to liberty in a constitutional sense. *Cf. Moran v. Burbine*, — U.S. —, 106 S.Ct.

1135, 89 L.Ed.2d 410 (1986); *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979).

2. *See* La.Rev.Stat.Ann. 28:53(F) & (K).

3. *Compare Granberg v. Ashland County*, 590 F.Supp. 1005 (E.D.Pa.1984) *and Jones v. Eagleville Hospital*, 588 F.Supp. 53 (E.D.Pa.1984) *with Tilbe v. Entitas Foundation*, 499 F.Supp. 817 (D.Nev.1980).

4. *See Blum v. Yaretsky*, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982). *Cf. Milonas v. Williams*, 691 F.2d 931, 939–40 (10th Cir.1982).

5. *See Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974); *Cf. Rendell-Baker v. Kohn*, 457 U.S. 830, 840–41, 102 S.Ct. 2764, 2771, 73 L.Ed.2d 418 (1982).

■ Finally, Jarrell raises a procedural due process complaint, alleging that he was denied the opportunity to confront his accusers. The state statute that authorizes emergency involuntary admissions requires numerous safeguards, including two independent medical assessments and a judicial hearing within five days of admission, if requested.[6] Jarrell was timely granted such a hearing and, under the extenuating circumstances in which an emergency commitment certificate is authorized, such a post-admission remedy provides sufficient procedural due process.[7]

No genuine issues of material fact being made in the record before it, the district court's rendition of summary judgment was proper and is therefore

AFFIRMED.

---

6. *See* La.Rev.Stat.Ann. 28:53(B) & (G); 28:171(L) (West 1975 & Supp.1986).

7. *Cf. Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Parratt v. Taylor,* 451 U.S. 527, 538–43, 101 S.Ct. 1908, 1914–17, 68 L.Ed.2d 420 (1981).